Chief Justice R.-bertson
delivered the opinion of the Court'.
In 1823, Frederick W. S. Grayson had a suit in ehancerv pending in the Bath circuit court, in his own name as complainant against the *433 •unknown heirs of Andrew Hare deceased, for a decree for a conveyance of a tract of land in said connty, which had been granted to the said Hare, and to which Grayson claimed the equitable right. Whilst the suit was pending, towit: on the 18th of August, 1823, Thomas Triplett, who seems to have been associated in some way, with Grayson in interest, sold the land to Samuel C. Gill and John Pieklehimer, who were then living on it, and claiming i£5 or a portion of it, under an adversary title. Triplett covenanted to convey the legal title to his vendees by deed of general warranty, within a year from the date of the contract, and as soon as a title should be vested in Grayson, by a decree to be rendered in the aforesaid suit in chancery.
Afterwards, towit: in May 1824, (a decree having in the mean time been obtained by Grayson, and a deed conformably thereto, having been made to him for the said land by a commissioner) a conveyance was executed and delivered to Gill,and Picklehimer, by Grayson, with a joint and several covenant by said Triplett, as well as himself, in the following words, “that the said Grayson has good right aad lawful authority, to sell and convey the premises herein specified, and the title to the same, they do hereby forever warrant and defend against the claim of all and every person, or persons whatsoever.” And thereupon, Gill and Pieklehimer made an endorsement on Triplett’s bond for a title, in which they acknowledged the receipt of a conveyance,, according to the tenor of the bond.
In 1829, during the pendency of a suit at law, instituted by Gill and Pieklehimer against Triplett for damages, for a breach of so much of the joint and several covenant in the deed as stipulated, that Grayson had good right and authority to sell and convey, Triplett and Grayson’s administrator filed their bill in chancery against Gill and Pieklehimer, and against certain persons as the heirs of John Hare and others, as his unknown heirs. They alleged in the bill, that the covenant as to the authority to sell and convey, was inserted in the deed through mistake, that the deed was intended and understood by all parties, to be a deed of general warranty of title *434 only, and that, if it operated more extensively, it was without consideration, that Gill and Pioklehimer insisted that Grayson had no title at the date of the deed, because, as they alleged Andrew Hare, had devised the land in the year 1800, to John Hare, and that therefore the decree against the unknown heirs of Andrew Hare passed no right.
jionii, e'oadii.ionei] to convey land, by deed with general war- , fanty — Deed withcovenant that grantor has “right and lawful autboliityto sell and convey” and covenant Sf warranty made by third person and obligor, endorsement on Bond by oblig°rj that deed lias baearecording,to the tun >r of the !’° 'd-’j.Gran' (,ruj tj li ive no title n>r «''th-iriti to ^r’viJl noV relieve obli-■>> bond, actlon th.it had ¡‘r‘Sbl and to sel] and conve,” upon “1!®8a*ionsof Verting such covenant,and that it was. without coa? sideration. Merely upon doraeZmt fjgor nTt cómpelled to re- : eeive a deed ^venant*10*1
*434 The complainants therefore prayed for a decree compelling the heirs of John Hare, to convey to Gill and Pieklehimer, and compelling the latter to accept such a conveyance, or for a decree for surrender of the possession, for rents and profits, and, for waste alleged to have been committed.
Gill and Pieklehimer, in their answer; denied that there was any mistake in the deed, insisted that the bill contained no sufficient grounds for delaying or obstructing their legal rights, and denied that they held or had used any other land, since the contract with Triplett, than what, they had in possession prior to, and at the date of that contract.
In an amended bill it was alleged that, since the filing of the original, Gill and Pieklehimer had obtained a judgment against Triplett, for $810 1Í, ip the action of covenant.
©n the final hearing, the circuit court dismissed the bill as to Gill and Pieklehimer. And to reverse that decree this writof error is prosecuted.
The record contains nothing that would authorize a reversal of the decree.
The alleged mistake has not been established. The denial in the answer was not as direct and specific as would have been perfectly satisfactory ; but altogether, it was, in our opinion, sufficient to throw-the onus on the plaintiffs in error. They offered no proof whatever, unless the deed, the bond, and the endorsement thereon, furnish intrinsic evidence of the alleged mistake. Triplett covenanted to make a general warranty deed simply. But the conveyance was made, not by him, but by Grayson; and therefore nothing in Triplett’s bond can lead, per se, to the inference that there was a mistake in the covenants in the deed. Nor would anvsuch de *435 duct ion be necessary, or even reasonable, had Gray-son, instead of Triplett, sold the land'and covenanted to convey the title by deed of general warranty.
Covenantthat f(ran^°rMs jar^fui authority to sell and convey,” is v-seizS”^ nor was it pri- or to July, 1 tu" kdversaryposonly imports «estiture of legal title am! right to convey iu
*435 The documents of title may not have been exhilv ited, and if they had been, nevertheless, the defendants m error" may not have been competent judges of their character and effect; and therefore, as is quite usual and often proper, as a precautionary measure ol pertect security, they might, and perhaps ought to, have required such a stipulation iñ the deed, as that we are now considering; for then,if the title were not complete, they would not have been bound to wait until actual eviction, as they would have had to-do undera simple covenant warranty. The endorsement on Triplett’s bond is not inconsistent with the covenant as to the ty of Grayson to convey. It only imports that conveyance had been accepted in discharge of Trip lett’s covenant. Kut it does not prove that had made that conveyance in his own name, nor that the deed which had been accepted, contained nothing not necessarily required by the bond. Such-a deed as that made in this case, cannot be thus controlled or qualified.
A. chancellor would not therefore, be justified in •decreeing relief on the ground of mistake. Such a mistake, in such a case, should be established clearly and satisfactorily.
Nor does the alleged want of consideration, furnish any ground for relief, because, as already suggested, the defendants were not bound to accept a-deed, without a covenant, as to the right to convey,
But the plaintiffs insist that, as a part of the land was, at the date of the- conveyance, in the adverse actual possession of the defendants, and the residue was then in the adverse possession of a stranger, and known to beso by the defendants, the presumption is strong, that the parties did not contemplate such an absurdity as a covenant of seizin, in the face of the known and contradictory fact. We need not say what effect this circumstance might, of itself and alone, be entitled to have if the covenant in the deed had been a covenant of seizin} because we are clear *436 ly of opinion that, it cannot be construed, and was not intended to be such a covenaut.
Court will not presume that parries did not understand their covenants according to iheir plain import.
Question tried at law will not be re-examined in equity unless «pon allegation of fraud in obtaining judgment at jaw.
Grayson, without being seized in fact, or in law, may, according to the law in force at the date of the deed, have had lawful right and authority to convey a legal title. The chain party act of 1824, did not take effect until July of that year.
The covenant in the deed imported only, that Grayson had a legal title which he had a right to convey ; and did not imply that he had possession. Such a covenant was not broken by an adversary-possession merely, hut was- broken only by1 a want of legal title in Grayson, such as he had a right to sell and convey. And this obvious interpretation of the language of the covenant is fortified, instead of being weakened, by th$ fact, well known to all tho parties, that Grayson was not, in fact seized. It would be unreasonable to suppose that the parties, knowing and admitting that Grayson, was not technically seized, intended such an absurd and incongruous covenant as that of seizin. Such an interpretation would be suicidal.
Wherefore, whatever the parties mayr in fact have intended, or however they may in fact have understood the conveyance, this court cannot judicially presume that they did not understand the covenants in the deed, according to their plain and inevitable grammatical and legal import, or that they could have understood the covenant (as to the authority to sell) as meaning nothing, or as amounting only to a general warranty of title, especially as such a warranty immediately succeeded in another and distinct sentence.
As the question of title at the date of the conveyance was fully tried in the suit at law, and it was therein decided that Grayson had not then a legal title, we will not, in this case, reverse that decision, but must, pro hac vice, consider that matter as res adjudicada not to be revised in a chancery suit, without allegation of fraud in obtaining the judgment for damages. But, were we permitted to reexamine the question of title (upon the writ of error,) we should decide, (as will appear in the opinion succeeding *437 this, in the common law suit directly presenting the point) that Grayson had not the legal title at the date of his deed to the defendants.
piu.ty wh(j"“l duos not she«t ,itl0 to rcs^tt'ition1'* rents or «lam-ages for waste,
Before this j Vioii alleged cq"ity of grantor llis he'r8 in<lis,. ^eL"fab‘e Par'
Triplett, for plaintiffs; Ilaggin, for defendant.-
We will not say what effect on the equitable rights of the parties, an ability to make a good legal title, and an offer ..to do so, even on .the hearing of this cause in the court below, .might have been entitled to have, if such ability and such tender had appeared. Perhaps such a state of case might, under all the circumstances, according to the case of Cotton vs. Ward (III Mon.) have entitled the plaintiffs to some relief.
But no other conveyance was offered, and the plaintiffs were not, on the hearing, in a condition to make one which would have passed the legal right once held by the grantee, A. Hare; nor is there any thing in this record, shewing, or even tending to shew, that they would ever be able to make such a title as the defendants have a right to demand. Before a title could be decreed upon Grayson’s alleged equity, his heirs would be indispensable parties. They were not parties to this suit; and therefore, had there been no other obstacles to a decree, transfering the title from John Hare’s heirs to the defendants, of to Triplett, or to Grayson’s hairs, the fact that the latter are strangers to this suit, would be insuperable.
As to the prayer for restitution, for rents, and for waste, .it is necessary only to suggest that, as there is no proof that the defendants hold or have used any other land since the contract with Triplett, than they held under an adversary claim, prio'r to that time, and as the plaintiffs have failed to shew any title in themselves, or in Grayson, they were not entitled to a decree for waste, or for rents, and cannot claim restitution of a possession which- they do not appear ever, to have had.
Wherefore, upon the whole record, as it is presented to this court, the decree of the circuit court must-be affirmed.